United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN WHEELER, et al.,

Plaintiffs,

v.

CITY OF OAKLAND, et al.,

Defendants.

_________________________________________/

No. C 05-0647 SBA

**ORDER**

[Docket Nos. 29, 30]

This matter comes before the Court on: (1) defendant City of Oakland's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) [Docket No. 29]; (2) defendants Ronald Abad, David Carillo, Richard Fielding, James Fisher, David Kozicki, Isaac Wilson, Isagani Pugao, and Arlene Rosen's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Docket No. 29]; and (3) defendants City of Oakland, Ronald Abad, David Carillo, Richard Fielding James Fisher, David Kozicki, Isaac Wilson, Isagani Pugao, and Arlene Rosen's Request for Judicial Notice [Docket No. 30]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS the City of Oakland's Motion for Judgment on the Pleadings and GRANTS IN PART AND DENIES IN PART defendants Ronald Abad, David Carillo, Richard Fielding, James Fisher, David Kozicki, Isaac Wilson, Isagani Pugao, and Arlene Rosen's Motion to Dismiss. The Court also GRANTS defendants City of Oakland, Ronald Abad, David Carillo, Richard Fielding James Fisher, David Kozicki, Isaac Wilson, Isagani Pugao, and Arlene Rosen's Request for Judicial Notice.

United States District Court
For the Northern District of California

## BACKGROUND

### A. Factual Background

#### 1. Parties

Plaintiffs John L. Wheeler and Gloria A. Wheeler ("Plaintiffs") are residents of defendant City of Oakland (the "City" or "Oakland"). (First Amended Complaint ("FAC") at ¶¶ 1-2.) They own property at 181 Hunter Avenue which is located in Oakland, California. (*Id.*) Plaintiffs also own several automobiles, including a 1957 Bentley, a 1975 Mercedes Benz, and a 1987 Chrysler. (*Id.* at ¶ 13.) At all relevant times, all three vehicles were mechanically operable, insured, had current registration, and were not abandoned. (*Id.* at ¶ 14.) When not in use, Plaintiffs parked the three vehicles at their property, either in the driveway or on a cement parking pad. (*Id.* at ¶ 15.)

Defendants Ronald Abad ("Abad"), Richard Fielding ("Fielding"), David Carillo ("Carillo"), and Isaac Wilson ("Wilson") were, during the relevant period, Specialty Combination Inspectors employed within the Community and Economic Development Agency of the City. (*Id.* at ¶ 3.)

Defendants Isagani Pugao ("Pugao") and James Fisher ("Fisher") were, at all relevant times, employed by the City Police Department as officers in the Vehicle Abatement Unit. (*Id.* at ¶ 5.) Defendant David Kozicki ("Kozicki") is a police lieutenant employed by the Oakland Police Department within the Traffic Division. (*Id.* at ¶ 6.) The Traffic Division is responsible for the supervision of the City's Vehicle Abatement Unit, which enforces the City's municipal ordinances pertaining to the parking and storage of automobiles on the City's streets and on privately owned property. (*Id.* at ¶ 6.) As part of his duties, Kozicki oversees the administration of the City Vehicle Abatement Unit. (*Id.*)

Defendant Arlene M. Rosen ("Rosen") is an employee of the City in the Office of the City Attorney. (*Id.* at ¶ 3.5.) Rosen is assigned to provide advice and counsel to the City's department involved in the implementation of the City ordinances pertaining to nuisance abatement. (*Id.*)

Defendant Calvin M. Wong ("Wong") is employed within the City's Community and Economic Development Agency and is responsible for municipal building code enforcement and nuisance abatement. (*Id.*)

Defendant Brookfield Homeowners Association ("Bookfield") is a business organization doing business in Alameda County. (*Id.* at ¶ 4.) Defendant Wiley Williams ("Williams") is a resident of the

United States District Court
For the Northern District of California

City and an officer of Brookfield. (*Id.*)

**2. Allegations**

On July 12, 2000, Specialty Combination Inspector Wilson entered Plaintiffs' residential property without Plaintiffs' permission and without a warrant to inspect Plaintiffs' vehicles. (FAC at ¶ 18.) Wilson cited Plaintiffs for parking their vehicles in an "unapproved location" and issued a Notice of Violation (the "July 2000 Notice") on July 21, 2000. (*Id.*) The July 2000 Notice was based on the Municipal Blight Ordinance (Oakland Municipal Code § 8.24.020) and another municipal ordinance. (FAC at ¶ 18.) The July 2000 Notice threatened further fines, inspections, and citations with a $5,000 minimum. (*Id.*)

On August 23, 2000, Specialty Combination Inspector Fielding entered Plaintiffs' property without Plaintiffs' permission and without a warrant and cited Plaintiffs for parking their vehicles in an unapproved location. (FAC at ¶ 19.) On August 25, 2000, Fielding issued a Notice of Violation (the "August 2000 Notice") to Plaintiffs requiring their vehicles to be removed. (*Id.*) The August 2000 Notice threatened to fine Plaintiffs if they did not comply with the ordinances in the future. (*Id.*)

On September 15, 2000, a hearing was held on the August 25, 2000 Notice. (FAC at ¶ 20.) After the hearing, Principal Inspection Supervisor Gerald Donahue wrote a letter to Plaintiffs rescinding the violation notice and apologizing for the City's error in interpreting Oakland Municipal Code § 8.24.020. (FAC at ¶ 20, Ex. A.) Although certain liens placed on Plaintiff's property as a result of the July 2000 Notice and the August 2000 should have been removed pursuant to the September 15, 2000 letter, they were not removed. (*Id.* at ¶ 20.)

On May 7, 2001, Police Officer Fisher came to Plaintiffs' residence and demanded the removal of the car covers from the three vehicles so that he could inspect them. (*Id.* at ¶ 21.) Fisher also threatened to arrest John Wheeler if he did not comply. (*Id.* at ¶ 21.) Fisher did not have a search warrant. (*Id.*)

On October 14, 2002, Police Officer Pugao entered Plaintiffs' property without a warrant to inspect Plaintiffs' vehicles. (*Id.* at ¶ 22.) Pugao stated that the vehicles were parked in an unapproved location. (*Id.*) He also stated that he would continue to enter Plaintiffs' property and would continue to fine Plaintiffs. (*Id.*) On October 15, 2002, Plaintiffs' former counsel Jeffrey D. Trowbridge

United States District Court
For the Northern District of California

("Trowbridge"), sent a letter to Rosen to complain about Pugao's October 14, 2002 vehicle inspection. (*Id.* at ¶ 23, Ex. B.) In the October 15, 2002 letter, Trowbridge told Rosen that the 1957 Bentley and the 1975 Mercedes were registered and operable. (*Id.*)

On December 12, 2002, Oakland City Auditor Roland Smith ("Smith") reviewed a citizen complaint that Plaintiffs had filed. (FAC at ¶ 24.) Smith visited Plaintiffs' residence and viewed the parking area and noted that the vehicles were operable, registered, insured, and being utilized. (*Id.*) Smith concluded that City Ordinance § 10.64.170 did not apply to Plaintiffs' vehicles and expressed this conclusion in a letter to Kozicki dated December 12, 2002. (*Id.* at ¶ 24, Ex. C.)

On August 6, 2003, September 18, 2003, and October 27, 2003, Specialty Combination Inspector Carrillo entered Plaintiffs' property without Plaintiffs' permission and without a warrant to inspect Plaintiffs' vehicles. (*Id.* at ¶¶ 25, 26.) Carrillo issued notices of violation to Plaintiffs on September 3, 2003 (the "September 2003 Notice") and November 7, 2003 (the "November 2003 Notice") for "vehicles stored in driveway and parked on front yard." (*Id.*) Additionally, the September 2003 Notice threatened administrative fees at a minimum of $718.00 for subsequent inspections and the possible assessment of administrative citations at a minimum of $5,000.00. (*Id.* at ¶ 25.)

Due to the fact that, in the past, certain vehicles Plaintiffs owned had been seized and sold by the City, defendants' actions caused Plaintiffs to be frustrated, bewildered, and frightened. (*Id.* at ¶ 27.) Plaintiffs therefore filed a citizen complaint with the City Auditor. (*Id.*)

On January 6, 2004, City Auditor Smith wrote Plaintiffs a letter indicating that he did not believe that City Ordinance § 8.24.020 applied to vehicles parked on Plaintiffs' property as long as the vehicles were operable and had current registration. (*Id.* at ¶ 27, Ex. D.)

On October 29, 2004, Abad entered Plaintiffs' property without a warrant to inspect Plaintiffs' vehicles. (*Id.* at ¶ 28.) At the time of Abad's inspection, the vehicles were registered, mechanically operable, insured, and well-maintained. (*Id.*)

On November 6, 2004, Fisher issued a "Notice of Intention to Abate and Remove an Inoperable Vehicle" (the "November 2004 Notice of Abatement") to Plaintiffs. (*Id.* at ¶ 29.) This November 2004 Notice of Abatement related to Plaintiffs' 1987 Chrysler. (*Id.*) At the time the November 2004 Notice of Abatement was issued, the 1987 Chrysler was registered and mechanically operable and not wrecked

United States District Court
For the Northern District of California

or abandoned. (*Id.*)

On November 18, 2004, Abad issued a notice of violation (the "November 2004 Notice") to Plaintiffs for "lawn parking." (*Id.*)

**B. Procedural History**

On August 23, 2004, Plaintiffs filed suit against the City of Oakland, Richard Fielding, David Carillo, Brookfield Homeowners Association, and Isagni Pugao for wrongfully applying Vehicle Abatement and Blight ordinances against Plaintiffs' vehicles. On January 31, 2005, Plaintiffs filed a First Amended Complaint, naming as defendants the City of Oakland, Ronald Abad, David Carrillo, Richard Fielding, James Fisher, David Kozicki, Isaac Wilson, Isagani Pugao, Arlene M. Rosen, Calvin M. Wong, the Brookfield Homeowners Association, and Wiley Williams. The First Amended Complaint asserts the following causes of action: (1) violation of 42 U.S.C. § 1983 (against the City, Abad, Carillo, Fielding, Fisher, Kozicki, Wilson, Pugao, Wong, and Rosen); (2) trespass (against Brookfield and Williams only); (3) intentional infliction of emotional distress (against all defendants); (4) conspiracy to deprive Plaintiffs' civil rights in violation of 42 U.S.C. § 1983 (against the City, Abad, Carillo, Fielding, Fisher, Kozicki, Wilson, Pugao, Williams, and Brookfield); (5) negligent infliction of emotional distress (against all defendants); (6) injunctive relief; and (7) declaratory relief.[1] Plaintiffs served the First Amended Complaint on the City on January 31, 2005.

On February 10, 2005, the City answered the First Amended Complaint and on February 11, 2005, the City removed the case to this Court.

On June 8, 2005, the clerk entered default against defendants Brookfield and Williams.

On March 3, 2006, the City filed the instant Motion for Judgment on the Pleadings pursuant to Federal Rule Civil Procedure 12(b)(6) and defendants Abad, Carillo, Fielding, Fisher, Kozicki, Wilson, Pugao, and Rosen filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the

---

[1]Specifically, Plaintiffs seek a declaration that: "Neither the City's Blight Ordinance nor its Vehicle Abatement Ordinance or any other municipal ordinance prohibits the storage of vehicles which are operable, currently registered, and insured and well maintained and in use from being stored at plaintiff's driveway, cement parking pad or lawn area at 181 Hunter Avenue, Oakland, California." Plaintiffs also seek a declaration that: "Neither City's Blight Ordinance nor its Vehicle Abatement Ordinance validly regulate vehicles which are not currently registered."

joint motion is hereinafter referred to as the "City Defendants' Motion to Dismiss").[2]

The parties are scheduled to commence trial on June 26, 2006.

**LEGAL STANDARD**

Under Federal Rules of Civil Procedure 12(b)(6) and 12(c), a motion to dismiss should be granted if it appears beyond doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (concluding that a motion to dismiss under 12(b)(6) should be treated as a motion for judgment on the pleadings under 12(c) if submitted after the pleadings were closed) . For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

The court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Miranda v. Clark County, Nevada*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim."); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."), *as amended by*, 275 F.3d 1187 (9th Cir. 2001); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.").

When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distribution Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The court should consider factors such as "the presence or absence

[2]Defendants Abad, Carillo, Fielding, Fisher, Kozicki, Wilson, Pugao, and Rosen made their first appearance in this action by filing the instant Motion to Dismiss.

United States District Court
For the Northern District of California

of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Pakage Express*, 885 F.2d 531, 538 (9th Cir. 1989). Of these factors, prejudice to the opposing party is the most important. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)). Leave to amend is properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Systems*, 957 F.2d 655, 658 (9th Cir. 1992).

## ANALYSIS

### A. Request for Judicial Notice and Request to Strike Other Extra-Pleading Materials

As a preliminary matter, the Court must first address: (1) defendants the City, Abad, Carillo, Fielding, Fisher, Kozicki, Wilson, Pugau, and Rosen's (collectively referred to herein as "the City Defendants") Request for Judicial Notice; and (2) the City Defendants' request that the Court strike the Declaration of John Wheeler, which has been submitted in support of Plaintiffs' Opposition, and certain extraneous materials attached as exhibits to Plaintiffs' Opposition brief.

In their Request for Judicial Notice, the City Defendants ask the Court to take judicial notice of the following documents pursuant to Federal Rule of Evidence 201: (1) the caption page of the initial complaint filed in this case; (2) the civil docket for United States District Court Case No. C 01-3044 MMC; (3) and a copy of Oakland Municipal Code § 10.64.020.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, Federal Rule of Evidence 201 provides an exception to this general rule. Fed. R. Evid. 201. Under Rule 201, a court may take judicial notice of "matters of public record" as long as the facts are not "subject to reasonable dispute." *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (citations omitted). Court filings and orders are the type of documents that are properly noticed under Rule 201. Notice can be taken, however, "only for the limited purpose of recognizing the 'judicial act' that the order [or filing] represents on the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994) (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2nd Cir.1992)); *see also General Electric Capital Corp. v. Lease Resolution Corp.*, 128

F.3d 1074, 1082, n. 6 (7th Cir.1997) ("We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth [of the matter] asserted therein because these findings are disputable and usually are disputed"); *San Luis v. Badgley*, 136 F.Supp.2d 1136, 1146 (E.D. Cal. 2000) (a court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the litigation, but rather to establish the fact of such litigation and related filings"). Here, the City Defendants are, in fact, requesting that the Court take judicial notice of the existence of the caption page of the initial complaint and the docket sheet from Case No. C 01-3044 MMC. Accordingly, their request that the Court take judicial notice of these documents is GRANTED.

The City Defendants also request that the Court take judicial notice of Oakland Municipal Code § 10.64.020. The municipal ordinance also falls within the ambit of Federal Rule of Evidence 201(b)(2) as it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See, e.g., Manufactured Home Communities, Inc. v. City of San Jose*, 358 F. Supp. 2d 896, 904 (N.D. Cal. 2003) (taking judicial notice of municipal ordinances), *rev'd on other grounds*, 420 F.3d 1022 (9th Cir. 2005). Further, even on a motion to dismiss, the Court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). Here, Plaintiffs' Motion to Dismiss necessarily relies on this municipal ordinance and neither party questions the authenticity of the document. As such, the request for judicial notice is GRANTED. For the same reasons, the Court also takes judicial notice of Chapter 8.24 of the Municipal Code, which is attached to Plaintiffs' Opposition as Exhibit C.

Plaintiffs' attempt to have the Court consider other extra-pleading materials – specifically, the newspaper articles attached as Exhibit A to the Opposition and the Declaration of John Wheeler – is completely improper. Plaintiffs do not seek to admit these documents for their legal effect, but for the truth of the matters asserted therein. This is not permissible on a motion to dismiss. *Hal Roach Studios, Inc.*, 896 F.2d at 1555 n.19. Accordingly, the Court hereby GRANTS the City Defendants' request to STRIKE Exhibit A to Plaintiffs' Opposition and the Declaration of John Wheeler.

**B. Motion to Dismiss**

In the instant Motion to Dismiss, the City Defendants assert the following arguments: (1) the first cause of action for violation of 42 U.S.C. § 1983 must be dismissed because Plaintiffs have not sufficiently alleged that their Fourth Amendment rights were violated; (2) the first cause of action must be dismissed as to the City because Plaintiffs have failed to show that an official City policy was the cause of any of the alleged constitutional injuries; (3) the first cause of action must be dismissed as to defendants Fielding, Wilson, and Fisher because it is barred by the applicable statute of limitations; (4) the first cause of action must be dismissed as to defendants Rosen and Kozicki because it fails to state a claim against them; (5) the fourth cause of action must be dismissed with respect to all defendants because the First Amended Complaint fails to state facts sufficient to establish a conspiracy; (6) the third and fifth causes of action must be dismissed because the First Amended Complaint does not set forth sufficient facts to establish either intentional or negligent infliction of emotional distress; (7) the third and fifth causes of action against the City must be dismissed because Plaintiffs have failed to identify a statutory enactment giving rise to a mandatory duty on the part of the City with respect to the claims arising under state law; (8) the sixth cause of action must be dismissed because Plaintiffs seek to enjoin lawful conduct; and (9) the seventh cause of action for declaratory relief is overly broad.

**1. Violation of 42 U.S.C. § 1983 and the Fourth Amendment**

The first argument that the City Defendants assert is that Plaintiffs' 42 U.S.C. § 1983 claim is subject to dismissal because Plaintiffs have failed to sufficiently allege a Fourth Amendment violation.[3] In the First Amended Complaint, Plaintiffs allege that they were subjected to "unreasonable searches" when the City Defendants entered Plaintiffs' residential property on multiple occasions between October

---

[3]The Fourth Amendment to the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend IV.

United States District Court
For the Northern District of California

2002[4] and December 2004 without a warrant and without Plaintiffs' consent.

The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. Amend. IV; *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995); *Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994). The ultimate test of reasonableness requires the court to balance the governmental interest that justifies the intrusion and the level of intrusion into the privacy of the individual. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996). The Supreme Court has emphasized that "reasonableness is still the ultimate standard under the Fourth Amendment." *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 539 (1967).

In order to claim the protection of the Fourth Amendment, one must "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, one which has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citation omitted). There is no simple test for reasonableness other than balancing the need to search against the invasion the search entails. *Id.* at 536-37. However, the guiding principle is that, with very few exceptions, "a search of private property without consent is unreasonable unless it has been authorized by a valid search warrant." *Id.* at 528-29.

As to entries onto private land to search for and abate suspected nuisances, the Ninth Circuit has held that the warrant requirement of the Fourth Amendment clearly applies. *Conner v. City of Santa Ana*, 897 F.2d 1487, 1490 (9th Cir. 1990) (holding that the seizure of vehicles from behind a fenced yard was a violation of the plaintiff's Fourth Amendment rights). However, in certain instances, the Ninth Circuit has denied a Fourth Amendment claim where the area searched is within the curtilage of the home and only semi-private. *Maisano v. Welcher*, 940 F.2d 499, 503 (9th Cir. 1991) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). Specifically, the Ninth Circuit has noted that "[a] driveway is only a semiprivate area" and that the "expectation of privacy which a possessor of land may reasonably have while carrying on

---

[4]The applicable limitations period for this cause of action is two years. Thus, although the First Amended Complaint refers to actions occurring in 2000 and 2001, since the initial complaint was filed in August 2004, only those actions occurring after August 2002 are actionable.

United States District Court
For the Northern District of California

activities on his driveway will generally depend upon the nature of the activities and the degree of visibility from the street." *United States v. Magana*, 512 F.2d 1169, 1171 (9th Cir. 1975). Thus, a person may establish a reasonable expectation of privacy in his or her driveway if he or she demonstrates the existence of special features of the driveway itself (*i.e.* enclosures, barriers, lack of visibility from the street) or the nature of activities performed upon it. *Maisano*, 940 F.2d at 503. However, if the vehicle is on a driveway and fully visible from the street, and no other special features are present, a court may conclude that the plaintiff did not have a reasonable expectation of privacy.

In the instant case, the City Defendants argue that the Court must dismiss Plaintiffs' first cause of action because Plaintiffs have "admitted that their vehicles were in the driveway." Specifically, the City Defendants contend that this "admission" compels the conclusion that the vehicles were "necessarily accessible to anyone entering their property." In support of this argument, the City Defendants primarily rely on the Ninth Circuit's holding in *Maisano*. Unlike *Maisano*, however, the present case is before the Court on a motion to dismiss, not on a motion for summary judgment. This is a critical distinction. On a motion to dismiss, dismissal is proper only if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. Further, the Court must construe the complaint in the light most favorable to the plaintiff, take all of the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. at 421; *Jacobson*, 105 F.3d at 1296. Applying this standard, the Court cannot not adopt the City Defendants' conclusion. It is possible that Plaintiffs could prove, with the introduction of further evidence, that they had a reasonable expectation of privacy in their driveway. Were this Court to conclude otherwise, it would be directly contrary to *Magana*, in which the Ninth Circuit stated that "[i]t would be equally unwise to hold, as a matter of law, that all driveways are protected by the Fourth Amendment from all penetrations *as to hold that no driveway is ever protected from police incursions*." *Id.* at 1171 (emphasis added). Accordingly, the Court denies the City Defendants' request that the Court dismiss Plaintiffs' first cause of action on this basis

**a. Municipal Liability**

However, defendant City of Oakland is nevertheless correct that the first cause of action against

the City should be dismissed because Plaintiffs have failed to allege that the City had an official policy of deliberate indifference to Plaintiffs' civil rights. Even assuming, *arguendo*, that Plaintiffs will be able to establish that certain law enforcement officers employed by the City violated Plaintiffs' civil rights, the City may not be held liable for the officers' actions merely because the City employed the officers. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (emphasis in original). In order to impose liability on a local governmental entity, Plaintiffs must prove that: (1) the municipality had a policy; (2) the policy amounted to deliberate indifference to Plaintiffs' constitutional rights; and (3) the policy was the moving force behind the constitutional violation. *Oviatt v. Pierce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

In their Opposition, Plaintiffs weakly contend that they have stated a viable claim against the City by alleging that certain persons with final policy making authority have affirmed a "continuing course of conduct" that has violated Plaintiffs' constitutional rights. Plaintiffs do not, however, provide the Court with a single relevant authority that supports their assertion that the vague allegations in the First Amended Complaint pertaining to the City are sufficient to establish municipal liability. As the City Defendants point out, in *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), the Ninth Circuit clarified that "[a]bsent a formal governmental policy, [Plaintiffs] must show a 'longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Id.* Further, under *Trevino*, Plaintiffs must also show that the custom is "so persistent and widespread that it constitutes a permanent and well settled city policy." *Id.* (internal quotations omitted). At most, Plaintiffs have alleged that they were subjected to periodic searches by individual law enforcement officers over the course of a two-year period which may, or may not, have violated Plaintiffs' Fourth Amendment rights. Even in the light most favorable to Plaintiffs, this is a far cry from establishing that the City had a "widespread" practice that was "pervasive" or "standard operating procedure."

In fact, the allegations in Plaintiffs' First Amended Complaint *negate* a finding that the City was deliberately indifferent to Plaintiffs' constitutional rights. For example, at paragraph 20 of the First Amended Complaint, Plaintiffs acknowledge that the City held a hearing on the August 2000 Notice and

that the Principal Inspection Supervisor subsequently rescinded the Notice and apologized to Plaintiffs. (FAC at ¶ 20.) Plaintiffs also allege, at paragraph 24 of the First Amended Complaint, that the City Auditor wrote to the Plaintiffs in 2004 and specifically told Plaintiffs, "If anybody . . . comes to your home and attempts to cite those vehicle, please call me . . . and I will place a call . . . in order to have the City avoid a misapplication of the Code section" and that defendant Rosen, acting on behalf of the City,[5] ***confirmed*** Smith's conclusion. (*Id.* at ¶¶ 24, 27, Ex. D.)

Accordingly, since the Court concludes that Plaintiffs could not amend their First Amended Complaint to state a claim against the City in a manner that is consistent with the current factual allegations, the first cause of action is hereby DISMISSED with respect to the City of Oakland WITH PREJUDICE.

**b. Dismissal of Fielding, Wilson, and Fisher**

Defendants Fielding, Wilson, and Fisher are also correct that the § 1983 claim against them is barred by the relevant statute of limitations. Since a two-year statute of limitations applies to a claim brought under 42 U.S.C. § 1983, and since Plaintiffs filed their complaint on August 23, 2004, all alleged violations that occurred prior to August 23, 2002 are time-barred. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) (holding that a two-year statute of limitations applies to § 1983 suits). The only allegedly "unconstitutional" actions carried out by Fielding and Wilson alleged in the First Amended Complaint occurred on July 21, 2000 and August 23, 2000, well outside of the statute of limitations. (FAC at ¶¶ 18, 19.) Similarly, with respect to Fisher, the only Fourth Amendment violation alleged in the First Amended Complaint occurred on May 7, 2001. (FAC at ¶ 21.) This was also outside of the limitations period.[6]

---

[5]In fact, Plaintiffs argue in their Opposition that Rosen had "final policy making authority" for the City. *See* Opp. at 20:6.

[6]Although Plaintiffs attempt in their Opposition to remedy their defective claim against Fisher by relying on the November 2004 Notice of Abatement, Plaintiffs' § 1983 claim is not premised on this action; it is premised on the purportedly wrongful searches conducted on Plaintiffs' property. The First Amended Complaint does not allege, and Plaintiffs have not established, that merely sending an abatement notice to Plaintiffs constitutes a violation of Plaintiffs' constitutional rights. Further, Plaintiffs' assertion that Fisher is liable because he "controlled" Pugao's actions is not supported by the First Amended Complaint. Nowhere in Plaintiffs' First Amended Complaint is Fisher alleged to be "the person in charge of the Vehicle Abatement Unit."



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Further, Plaintiffs' argument that this Court should apply the "delayed discovery rule" to this action is without merit. While it is generally true that a cause of action does not accrue until a person has "notice or information of circumstances to put a reasonable person on inquiry," it is beyond dispute that Plaintiffs were on "inquiry" as soon as the first purportedly unlawful vehicle inspection occurred. *See Norgart v. Upjohn Co.*, 981 P.2d 79, 89 (Cal. 1999). Indeed, Plaintiffs' contention that they were not aware of their rights until 2004 is belied by the fact that Plaintiffs filed a nearly identical lawsuit against the City of Oakland and other defendants in this district in 2001. Because there is no way that Plaintiffs can amend their pleadings to circumvent the statute of limitations, the first cause of action against defendants Fielding, Wilson, and Fisher is hereby DISMISSED WITH PREJUDICE.

**c. Dismissal of Rosen**

Additionally, the first cause of action is also dismissed with respect to defendant Rosen because Plaintiffs allege no action by Rosen that injured them. Instead, Plaintiffs merely assert that Rosen was the recipient of a letter dated October 15, 2002 from Plaintiffs' former attorney Jeffery Trowbridge. This fact is utterly insufficient to establish liability for the purported Fourth Amendment violations. In addition, even if defendant Rosen were in a supervisory role, there is no evidence that Rosen's receipt of this letter "set in motion a series of acts by others." Moreover, Plaintiffs' assertion that defendant Rosen concurred in City Auditor Smith's letter militates against any reasonable inference that Rosen "acquiesced" in the alleged violations of Plaintiffs' constitutional rights. (FAC at ¶ 28.) For these reasons, the first cause of action against Rosen is dismissed. Further, since any additional allegations pertaining to Rosen would be inconsistent with Plaintiffs' current assertion that Rosen concurred with City Auditor Smith's letter, the first cause of action is DISMISSED WITH PREJUDICE.

**d. Dismissal of Kozicki**

Defendant Kozicki, however, has not sufficiently shown that he should be dismissed from this lawsuit. In the Motion to Dismiss, Kozicki asserts that Plaintiffs have not alleged any facts showing that he acted in any way to injure them and point out that Plaintiffs allege only that: (1) he received a letter from City Auditor Roland Smith dated December 12, 2002, addressing the applicability of City Ordinance § 10.64.170 to Plaintiffs' vehicles; and (2) he was in a supervisory role in the Vehicle Abatement Unit of the Oakland Police Department.

Although Kozicki is correct that, under 42 U.S.C. § 1983, a supervisor is typically held liable only if "he sets in motion a series of acts by others . . . which he knew or should have known would cause others to inflict a constitutional injury," a supervisor can also be held liable in his individual capacity if he failed to adequately train or supervise officers, acquiesced in the constitutional deprivation, or otherwise showed a reckless or callous indifference to the rights of others. *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005); *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir.1991). Reviewing the First Amended Complaint in the light most favorable to Plaintiffs, the Court concludes that the allegations against Kozicki are sufficient to state a claim. Accordingly, Kozicki's Motion to Dismiss the first cause of action is DENIED.

**2. Conspiracy to Violate 42 U.S.C. § 1983 and the Fourth Amendment**

The next argument asserted in the City Defendants' Motion to Dismiss is that Plaintiffs' fourth cause of action for conspiracy to deprive civil rights in violation of 42 U.S.C. § 1983 must be dismissed because the underlying factual allegations are insufficiently vague and conclusory.

To prove a conspiracy under § 1983, a plaintiff must allege facts sufficient to show "an agreement or 'meeting of the minds' to violate constitutional rights." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir.1989). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999). To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. *Id.* Conclusory allegations of a conspiracy are insufficient, but a showing that the alleged conspirators have committed acts that "are unlikely to have been undertaken without an agreement" may allow the inference of the existence of a conspiracy. *Id.*; *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).

Here, Plaintiffs' First Amended Complaint is premised entirely on conclusory allegations that defendant Williams, on behalf of the Brookfield Homeowners Association, conspired with the City Defendants to misapply the municipal ordinances in order to deprive Plaintiffs of their Fourth Amendment rights. Although this Court must consider whether there are enough circumstantial facts alleged in the First Amended Complaint to suggest an inference of conspiratorial activity, the First

United States District Court
For the Northern District of California

Amended Complaint is largely devoid of such relevant material facts. In fact, Plaintiffs do not even attempt to argue in their Opposition that the facts alleged in the First Amended Complaint are the type of actions that "are unlikely to have been undertaken without an agreement." More importantly, however, the Court also notes that – despite the fact that this action has been pending for nearly twenty months – the only additional allegations that Plaintiffs have identified in their Opposition brief that would bolster their conspiracy claim are time-barred and pertain solely to Fielding. *See Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir.1986). Accordingly, the City Defendants' Motion to Dismiss Plaintiffs' fourth cause of action is GRANTED WITHOUT LEAVE TO AMEND.[7]

**3. Emotional Distress Claims**

The City Defendants' Motion to Dismiss Plaintiffs' third and fifth causes of action, for intentional infliction of emotional distress and negligent infliction of emotional distress, is also GRANTED WITHOUT LEAVE TO AMEND.

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the possibility of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Christensen v. Superior Court*, 820 P.2d 181, 202 (Cal. 1991). To be outrageous, conduct must be so extreme as to "exceed all bounds of that usually tolerated in a civilized community." *Id.* While the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact, the court may determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Trerice v. Blue Cross of California*, 209 Cal. App. 3d 878, 883 (Cal. Ct. App. 1989). Behavior may be considered outrageous if a defendant: (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.

---

[7]Dismissal with prejudice is also supported by the fact that Plaintiffs were given an opportunity to amend their complaint after the City's demurrer in state court, and nevertheless have still failed to allege sufficient facts.

*Kiseskey v. Carpenters' Trust for So. California*, 144 Cal. App. 3d 222 (Cal. Ct. App. 1983).

In California, there is no independent tort of negligent infliction of emotional distress. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965 (Cal. 1993). Negligent infliction of emotional distress is merely a form of the tort of negligence. *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129 (Cal. 1993). Thus, to establish a claim for negligent infliction of emotional distress, the plaintiff must set forth each of the elements of negligence: (1) duty; (2) negligent breach of duty; (3) legal cause; and (4) damages caused by the negligent breach. *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 463 (Cal. Ct. App. 2003). "Unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Gu v. BMW of North America, LLC*, 132 Cal. App. 4th 195 (Cal. App. Ct. 2005).

Here, although inarticulately plead, Plaintiffs' third and fifth causes of action appear to be premised on: (1) "being repeatedly depriv[ed]" of the "peaceful and quiet enjoyment of their property"; and (2) being "repeatedly threatene[d] . . . with fines and loss of their personal and real property." As noted above, since the law recognizes that behavior may be considered "outrageous" when a defendant abuses a relation or position which gives him power to damage a plaintiff's interests, and since police officers have a duty to maintain the peace and security of the community, Plaintiffs have arguably *partially* satisfied the pleading requirements of an intentional or negligent infliction of emotional distress claim, but only with respect to defendants Abad, Carillo, Pugao, and Kozicki.[8] *Kiseskey v. Carpenters' Trust for So. California*, 144 Cal. App. 3d 222 (Cal. Ct. App. 1983); *People v. West*, 144 Cal.App.2d 214, 220 (Cal. Ct. App. 1956) ("Police officers are guardians of the peace and security of the community").

---

[8]As the City Defendants correctly point out, the emotional distress claims against Fielding, Fisher, and Wilson are time-barred. *See* Cal. Civ. Code § 335.1. As such, in addition to the reasons stated above, Plaintiffs' third and fifth causes of action against Fielding, Fisher, and Wilson are DISMISSED WITH PREJUDICE. Further, since Plaintiffs' First Amended Complaint is devoid of any allegations showing that Rosen acted in any way – either intentionally or negligently – that caused the alleged emotional distress, the third and fifth causes of action are DISMISSED WITH PREJUDICE with respect to Rosen as well.

United States District Court
For the Northern District of California

Nevertheless, Plaintiffs' third and fifth causes of action must be dismissed because Plaintiffs utterly fail to plead facts showing that they suffered the requisite level of emotional distress. To state a cause of action for either intentional or negligent infliction of emotional distress, a plaintiff is required to show *severe* emotional distress. *Kiseskey*, 144 Cal. App. 3d at 231; *Butler-Rupp v. Lourdeaux*, 134 Cal. App. 4th 1220, 1226 (Cal. App. Ct. 2005). Severe emotional distress means "emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Kiseskey*, 144 Cal. App. 3d at 231. The law is clear that a mere momentary or transitory emotional distress is insufficient to constitute severe emotional distress. *Id.* In essence, here, Plaintiffs merely allege – in conclusory fashion – that they suffered "fear," "fright," and "humiliation" over the potential loss of their property whenever they were visited by the inspectors or police officers, which was about once or twice a year. There are no allegations supporting the inference that the resulting distress was of such severity that "no reasonable man in a civilized society should be expected to endure it." In fact, Plaintiffs did, presumably, endure it for nearly four years before filing this lawsuit. Moreover, the correspondence attached to Plaintiffs' First Amended Complaint – which makes ***no*** mention of severe emotional distress – contradicts Plaintiffs' assertion that the emotional distress suffered by Plaintiffs was debilitating or intolerable. As such, Plaintiffs' third and fifth causes of action are hereby DISMISSED WITH PREJUDICE.[9]

Further, with respect to the City, the City correctly argues that a plaintiff cannot state a claim against a public entity unless he or she has affirmatively alleged a statutory enactment giving rise to a mandatory duty on the part of the public entity. *See Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 498-99 (2000). Plaintiffs fail to respond to this argument and, as such, tacitly concede that the City is correct. As such, in addition to the reasons stated above, the emotional distress claims asserted against the City are hereby DISMISSED WITH PREJUDICE.

**4. Claims for Injunctive and Declaratory Relief**

In their Motion to Dismiss, the City Defendants also ask the Court in a footnote to "reject"

---

[9]Again, the late stage of these proceedings support dismissal with prejudice. Significantly, in opposing the City Defendants' Motion to Dismiss, Plaintiffs have not stated that they are capable of pleading any further facts that would support cognizable emotional distress claims.

Plaintiffs' sixth and seventh causes of action – which are for injunctive and declaratory relief, respectively – because the relief sought is either legally impermissible or overly broad. The City Defendants do not provide the Court with any further analysis, or authority, for their request. Plaintiffs do not directly respond to this argument.

The Court declines to dismiss Plaintiffs' claims for injunctive or declaratory relief based on the City Defendants' bare, unsupported footnote. Whether or not the City Defendants are technically correct that the relief sought is overly broad, it is premature for the Court to rule on the City Defendants' request until Plaintiffs' substantive claims have been fully adjudicated. If Plaintiffs prevail on their claims, they may be entitled to either injunctive or declaratory relief, and the proper scope of this relief will be determined on the fully developed record. Of course, if Plaintiffs do not prevail on their claims, Defendants' request to "reject" the sixth and seventh causes of action will be moot.

**C. Dismissal of Non-Appearing Defendant**

As a final matter, the Court hereby DISMISSES defendant Calvin Wong from this case WITHOUT PREJUDICE due to Plaintiffs' failure to comply with Federal Rule of Civil Procedure 4(m). Rule 4(m) provides that if the service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time." Fed. R. Civ. P. 4(m). Since the First Amended Complaint was filed on August 2004, the 120-day period has elapsed, and, to date, no evidence has been presented to the Court indicating that Wong has been served, nor has there been a proper request from Plaintiffs for an extension of the time for service. In fact, Plaintiffs' counsel has stated that he has been unable to locate Wong. Since Plaintiffs have not properly moved to extend the time for service, Wong is hereby dismissed.

**CONCLUSION**

IT IS HEREBY ORDERED THAT the City Defendants' Request for Judicial Notice [Docket No. 30] is GRANTED.

IT IS FURTHER ORDERED THAT Exhibit A to Plaintiffs' Opposition and the Declaration of John Wheeler are STRICKEN.

IT IS FURTHER ORDERED THAT the City of Oakland's Motion for Judgment on the

Pleadings [Docket No. 29] is GRANTED. The City of Oakland is DISMISSED from this lawsuit WITH PREJUDICE.

IT IS FURTHER ORDERED THAT the individual City Defendants' Motion to Dismiss [Docket No. 29] is GRANTED IN PART AND DENIED IN PART as follows:

(1) Plaintiffs' first cause of action is DISMISSED WITH PREJUDICE with respect to defendants Fielding, Fisher, Wilson, and Rosen;

(2) Plaintiffs' third and fifth causes of action are DISMISSED WITH PREJUDICE; and

(3) Plaintiffs' fourth cause of action is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED THAT defendant Calvin Wong is DISMISSED WITHOUT PREJUDICE due to Plaintiffs' failure to comply with Federal Rule of Civil Procedure 4(m).

IT IS SO ORDERED.

Dated: 4/27/06

Saundra B. Armstrong
SAUNDRA BROWN ARMSTRONG
United States District Judge

United States District Court
For the Northern District of California